1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10   SABREENA J. SCHNEIDER,                     CASE NO. C11-04 MJP

11            Plaintiff,                        ORDER ON MOTIONS FOR
                                               SUMMARY JUDGMENT
12       v.

13   TWIN CITY FIRE INSURANCE
     COMPANY,
14
              Defendant.
15

16       The Court, having received and reviewed:

17   1.  Defendants' Motion for Partial Summary Judgment (Dkt. No. 19)

18   2.  Plaintiff's Response to Defendants' Motion for Partial Summary Judgment (Dkt. No.

19       21)

20   3.  Defendants' Reply Memorandum in Support of Partial Summary Judgment (Dkt. No.

21       37)

22   4.  Plaintiff's Cross-Motion for Partial Summary Judgment (Dkt. No. 24)

23
24

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT- 1

5.  Twin City's Response to Schneider Cross-Motion for Summary Judgment (Dkt. No. 43)

6.  Plaintiff's Reply in Support of Plaintiff's Cross-Motion for Summary Judgment (Dkt. No. 45)

7.  Defendants' Surreplies (Dkt. Nos. 48 and 50)

and all attached declarations and exhibits, makes the following ruling:

IT IS ORDERED that Defendants' motions to strike Plaintiff's late-filed material (Plaintiff's Exhibits 2 and 3 to Dkt. No. 46 and the entirety of Dkt. No. 49) are GRANTED.

IT IS FURTHER ORDERED that Defendant's Twin City Fire Insurance Co.'s motion to dismiss Defendant The Hartford Casualty Insurance Co. is GRANTED.[1]

IT IS FURTHER ORDERED that both motions for partial summary judgment are DENIED.

## Background

On September 26, 2008, Plaintiff was involved in an auto accident and submitted Underinsured Motorist (UIM) and Personal Injury Protection (PIP) claims to Defendant Twin City under her policy. Decl. of Schneider at 1-2.  In April of the next year, following a period of medical treatment, Defendant's claims handler referred Plaintiff's PIP claim to a chiropractic expert for evaluation.  The chiropractic expert concluded that further treatments were unnecessary.  On April 21, 2009, Defendant wrote to Plaintiff and advised her that it was discontinuing further payments under her PIP coverage.   Schneider Decl., Ex. 4.

On June 4, 2010, Plaintiff settled her UIM claim with Defendant for $21,500. McCormack Decl., Ex. G.  In late August of 2010 (Defendant claims the date is August 26;

---

[1] Plaintiff stipulated to the dismissal of this defendant.  Pltf Response, p. 2, fn. 1.

Plaintiff alleges that it was August 27), Plaintiff executed an Insurer Fair Conduct Act (IFCA; RCW 48.30.015) notice to Defendant.   Based on Plaintiff's allegation that the insurance company was in violation of WAC 284-30-395[2], Plaintiff advised Defendant that unless it cured its breach/unfair practice within the statutory 20 days allowed, she would file a lawsuit. McCormack Decl., Ex. H.

Later that year, Defendant came to believe that it had inappropriately terminated Plaintiff's PIP payments (having concluded that terminating the benefits based on a chiropractic report was a violation of the WAC's regarding unfair insurance practices) and sent Plaintiff a letter on October 5, 2010 which:

1. Rescinded its denial of benefits
2. Indicated it would send additional payments owed to providers directly to them
3. Requested all additional medical documents for expenses incurred since the April 2009 denial[3]

McCormack Decl., Ex. I.

There appears to be no dispute that Plaintiff never provided any further documentation of additional medical expenses to Defendant nor responded in any way to the letter of rescission.

On November 1, 2010, Plaintiff filed this lawsuit against Defendant, alleging:

1. Breach of contract
2. Bad faith
3. Negligence
4. Violation of the Washington Consumer Protection Act
5. Violation of the Insurance Fair Conduct Act (IFCA), RCW40.38 *et seq.*

---

[2] WAC 284-30-395 makes it an "unfair insurance practice" to deny coverage or payment of benefits based on a report which is prepared by someone other than a health care professional "in the same field or specialty" as the persons from whom the insured has received treatment.
[3] IFCA provides for a 20-day period in which to "cure" the alleged violation.  RCW 48.30.015(8)(a) and (b). Because of the parties' conflicting allegations regarding when the letter was sent and received, it is uncertain at this point exactly when the 20-day "cure" period expired.  There appears to be no dispute, however, that Defendant Twin City did not respond with its "cure" within the 20-day period.

Dkt. No. 1, Exh. A.

The above facts are undisputed.  Plaintiff (*see* Dkt. No. 22, Decl. of Schneider) alleges  --and Plaintiff's counsel steadfastly maintains throughout her briefing – that she was only ever treated by medical doctors.  At some point during the discovery process (after the letter of October 5, 2010), Defendant Twin City came into possession of a medical evaluation which reported that Plaintiff had received chiropractic care as part of her treatment for her injuries.  McCormack Decl., Ex. B-Supp.

### Discussion

Defendant initially contends, in its moving papers, that it cannot be liable for an IFCA violation because it did not deny "a claim," it merely terminated Plaintiff's benefits after a period of time.  To call this a "selective" reading of the regulation would an understatement.  WAC 284-30-395 on its face applies to an unreasonable denial of "a claim for coverage or *payment of benefits*."  RCW 48.30.010 (emphasis supplied).  The Court has no doubt that IFCA was intended to apply to this situation.

The central issue in both parties' motions is the meaning and applicability of WAC 284-30-395.  It is the entire basis for Plaintiff's lawsuit – Defendant's alleged violation of this WAC (by using a chiropractic expert's report as the rationale for their termination of benefits) forms the foundation for her claims of violations of IFCA and the Washington Consumer Protection Act, plus her claims of bad faith.  The regulation states, in relevant part:

> To eliminate unfair acts or practices in accord with RCW 48.30.010, the following are hereby defined as unfair methods of competition and unfair or deceptive acts or practices in the business of insurance specifically applicable to automobile personal injury protection insurance…
>
> (3)(a)  Health care professionals with whom the insurer will consult regarding its decision to deny, limit, or terminate an insured's medical and hospital benefits shall be currently

licensed, certified or registered to practice in the same health field or specialty as the health care professional that treated the insured.

Defendant's first argument is that a violation of this WAC cannot form the basis for a violation of IFCA. Defendant reads the law as restricted to violations of five specific WAC codes enumerated in the statute (none of which is WAC 284-30-395). RCW 48.30.010(a) – (e).

The Court disagrees. There is a sixth subsection (RCW 48.30.010(f)) which provides that the IFCA is violated when a breach occurs of "[a]n unfair claims settlement practice rule adopted under RCW 48.30.010 by the insurance commissioner intending to implement this section. The rule must be codified in chapter WAC 284-30 of the Washington Administrative Code." Defendant argues that subsection (f) is not a "catch-all" intended to sweep in all WAC insurance regulations, but it completely ignores the language of WAC 284-30-395, which (1) is clearly "codified in WAC 284-30" and (2) states that it was enacted "[t]o eliminate unfair acts or practices in accord with RCW 48.30.010." There is no question that a violation of this regulation would constitute an IFCA violation.

Defendant also tries to make the legal argument that chiropractors and medical doctors who are back specialists are "licensed, certified or registered to practice in the same health field or specialty" and therefore using a chiropractic report to determine when to terminate benefits for a patient being treated by medically-certified back specialists is not a violation of the regulation. Defendant cites no legal authority for this argument. The Court is unaware of any authority directly on point, but finds the holding of <u>Miller v. Peterson</u> instructive: the issue in that case was "the propriety of practitioners of one school of medicine (orthopedic surgeons) testifying against a practitioner of another school of medicine (podiatrist). The general rule is that a practitioner of one school of medicine is not competent to testify as an expert in a malpractice action against a practitioner of another school of medicine." 42 Wn.App. 822, 831(1986). The Court finds that

1  chiropractors are not "licensed, certified or registered to practice in the same health field or

2  specialty" as medical doctors for purposes of this WAC.

3          Ultimately, however, both of the Summary Judgment motions fail for a simple reason:

4  there is a disputed issue of material fact regarding whether Plaintiff was treated chiropractically

5  for her injuries. For the first part of the briefing (Defendant's motion for summary judgment),

6  both sides are clearly operating under the assumption that she was not.  There is no mention of a

7  chiropractor treating Plaintiff in the correspondence between the two sides prior to the

8  termination of the benefits.  Defendant unquestionably reversed its initial termination based on

9  the belief that, because Plaintiff had not been treated by a chiropractor, it was on untenable legal

10  ground in basing its decision to terminate benefits on a chiropractic evaluation.

11          But at some point following its October 5, 2010 letter, Defendant discovered or came into

12  possession of a May 2009 medical report from a Dr. Bransford (Decl. of McCormack, Ex. B-

13  Supp): in its response/reply briefing, for the first time, it produces the report (which records that

14  Plaintiff indicated she had been seen by a chiropractor) and argues on that basis that there was no

15  WAC violation.  Defendant claims (without citation to the record) that Plaintiff continued to

16  deny at deposition that she had ever received chiropractic treatment, but argues that it does not

17  matter whether she actually received any such treatment or not.  What matters (Defendant

18  maintains) is that there is a record reflecting chiropractic treatment, therefore the insurance

19  company was not in violation of the WAC for basing its termination decision on a chiropractic

20  evaluation.

21          Again, there is no citation to any legal authority in support of this position, and the Court

22  finds it a dubious proposition that Defendant can claim retroactively that its actions were

23

24

1  reasonable – it clearly did not know that Plaintiff had received chiropractic treatments at the time

2  it made its determination to terminate benefits.  Plaintiff fails to respond to the argument at all.

3        But, as best the Court can ascertain from the totality of Plaintiff's briefing, it appears that

4  she is not conceding that she was treated by a chiropractor for the injuries at issue.  Thus the

5  question of whether she received chiropractic treatment remains a disputed issue of material fact

6  which defeats summary judgment in favor of either side.

7        Defendant also submits (in its response brief to Plaintiff's cross-motion) the report of its

8  medical expert Dr. Chong, confirming the initial chiropractic evaluation that further treatment of

9  Plaintiff was unnecessary by April 2009.  Response Decl. of McCormack, Ex. A. Unhelpfully,

10  Plaintiff never responds to this argument.  Defendant argues that this definitively settles the

11  question of whether it acted in violation of the WAC or in bad faith, but it again produces no

12  case authority which permits it to underlineretroactively validate a decision which (at the time, under the

13  information it had available) was in violation of the prohibitions against unfair insurance

14  practices.

15        There are several other legal arguments and issues raised in the parties' briefing (whether

16  Defendant's use of the chiropractic evaluation (prior to the discovery of the Bransford report)

17  was a "good faith" mistake which cannot give rise to a bad faith claim, whether Defendant

18  adequately "cured" the violation by its actions following the Oct. 5, 2010 letter and whether

19  Plaintiff actually suffered any damages following the denial of benefits in April 2009).

20  However, the issue of disputed material fact concerning Plaintiff's chiropractic treatment defeats

21  summary judgment for either party, so further rulings on these other issues would be advisory

22  and would simply constitute *dicta* to the central holding in this order.  The Court declines to rule

23  on them.

24

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT- 7

1    **<u>Defendant Motions to Strike</u>**

2         In Plaintiff's reply brief in support of her cross-motion for summary judgment, she

3    submitted two exhibits (Exh's 2 and 3, Dkt. No. 46) which Defendant moved to strike because

4    the evidence was being produced for the first time and it had no opportunity to respond.  Then,

5    two weeks later, Plaintiff filed an additional 800+ pages of deposition testimony and exhibits

6    (without explanation or request).  *See* Dkt. No. 49. There is no question that Plaintiff is not

7    permitted to submit evidence by means of a reply brief to which Defendant has no opportunity to

8    respond.  Defendant's motion to strike this late-filed evidence is GRANTED.

9

10        The clerk is ordered to provide copies of this order to all counsel.

11        Dated: November 16, 2011.

12

13

14   Marsha J. Pechman
     United States District Judge

15

16

17

18

19

20

21

22

23

24